UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT and LINDA HOEKMAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TAMKO BUILDING PRODUCTS, INC.,<br><br>Defendant. | No. 2:14-cv-01581-TLN-KJN<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS** |

This matter is before the Court pursuant to Defendant Tamko Building Products, Inc.'s ("Defendant" or "Tamko") Motion to Compel Arbitration and Dismiss. (ECF No. 11.) Plaintiffs Robert and Linda Hoekman ("Plaintiffs") have filed an opposition to Defendant's motion. (ECF No. 17.) The Court has carefully considered the arguments raised in Defendant's motion and reply, as well as Plaintiffs' opposition. For the reasons set forth below, the Court dismisses Plaintiffs' claims so that they may be addressed in arbitration as required by the arbitration clause in the limited warranty ("Limited Warranty") accompanying Defendant's product.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

In February 2006, Plaintiffs had Tamko[1] shingles installed on their home in Truckee,

---

[1] Tamko Building Products, Inc. claims to be "a leading independent manufacturer of residential and commercial building products[.]" (Compl., ECF No. 1 at ¶ 31.)

1

California by Truckee River Roofing.  (Compl., ECF No. 1 at ¶ 21.)  Plaintiffs allege that they purchased Defendant's shingles instead of those from other manufacturers because of Defendant's representations in its advertising and marketing materials, particularly that Defendant's shingles would be free from defects for fifty years.  (ECF No. 1 at ¶ 23.)  Plaintiffs indicate that the packaged shingles were delivered directly into the care of the contractors working on their home.  (ECF No. 17 at 10.)  They argue, therefore, that they never saw nor agreed to any arbitration clause.  (ECF No. 17 at 10.)

In August 2013, Plaintiffs state that they discovered their shingles were severely cracking, blistering, and prematurely failing, and that there was significant granule loss on parts of their roof.  (ECF No. 1 at ¶ 24.)  Plaintiffs allege that they contacted Defendant and received a warranty claim form to be completed and returned along with photographs and other supporting documentation.  (ECF No. 1 at ¶ 25.)  Plaintiffs further state that they promptly returned the warranty claim form, complete with photographs, to Defendant on September 13, 2013.  (ECF No. 1 at ¶ 25.)  On or about October 10, 2013, Plaintiffs state that they received a letter from Defendant containing a "Tamko Warranty Claim Settlement Work Sheet[,]" a "Material Certificate" that prorated forty squares of the same shingles Plaintiffs had purchased previously, and a copy of the Limited Warranty.  (ECF No. 1 at ¶ 26.)  Plaintiffs also received a check for one-hundred dollars, which they subsequently cashed.  (Def. Mem. of Points and Authorities in Supp. of Mot. to Compel and Dismiss, ECF No. 12 at 14.)

On July 3, 2014, Plaintiffs filed a class action complaint against Defendant seeking declaratory, monetary, and injunctive relief for violations of California Business and Professions Code Sections 17200 and 17500; a violation of the California Consumer Legal Remedies Act; and negligence, negligent design, and negligence per se.  (ECF No. 1.)  Plaintiffs allege that Tamko used less than the required amount of asphalt in its shingles, resulting in their premature deterioration.  (ECF No. 1 at ¶ 11.)  Plaintiffs further contend that Tamko knew or should have known of this defect, despite representations indicating that the product met industry standards. (ECF No. 1 at ¶ 16.)

On September 15, 2014, Defendant filed the instant motion to compel arbitration and

dismiss Plaintiffs' complaint on the grounds that Plaintiffs consented to Defendant's Limited Warranty, which included an arbitration clause. (ECF No. 11.) Plaintiffs argue that they did not learn of the Limited Warranty until after they contacted Defendant about the damaged shingles in August 2013. (ECF No. 1 at ¶ 27.) They assert that, had they known about the Limited Warranty's provisions, they would not have had Defendant's shingles installed at their home. (ECF No. 1 at ¶ 28.)

## II.     STANDARD OF LAW

"[T]he federal law of arbitrability under the Federal Arbitration Act ("FAA") governs the allocation of authority between courts and arbitrators." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). There is an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 631 (1985). As such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 626 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

Generally, in deciding whether a dispute is subject to an arbitration agreement, the Court must determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). As such, the Court's role "is limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991).

"In determining the existence of an agreement to arbitrate, the district court looks to 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration.'" *Botorff v. Amerco*, No. 2:12-cv-01286, 2012 WL 6628952, at *3 (E.D. Cal. Dec. 19, 2012) (citing *Wagner v. Stratton*, 83 F.3d 1046, 1049 (9th Cir. 1996)). An arbitration agreement may only "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC*

*v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (quoting *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  Therefore, courts may not apply traditional contractual defenses like duress and unconscionability, in a broader or more stringent manner to invalidate arbitration agreements and thereby undermine FAA's purpose to "ensur[e] that private arbitration agreements are enforced according to their terms." *Id*. at 1748 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

If a court ". . . determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration, or to dismiss the case if all of the alleged claims are subject to arbitration." *Delgadillo v. James McKaone Enters., Inc.*, No. 1:12-cv-1149, 2012 WL 4027019, at *3 (E.D. Cal. Sept. 12, 2012.)  The plain language of the FAA provides that the Court should "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3.  However, "9 U.S.C. § 3 gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not preclude summary judgment when all claims are barred by an arbitration clause.  Thus, the provision does not limit the court's authority to grant dismissal in the case." *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).

### III.   ANALYSIS

Defendant moves the Court for an order compelling Plaintiffs to submit their claims to arbitration on an individual basis and to dismiss the proceeding.  (ECF No. 12 at 5.)

Defendant argues that Plaintiffs' Complaint should be dismissed because, by retaining the Tamko shingles, Plaintiffs agreed to the mandatory arbitration clause that was printed on the packaging as part of the Limited Warranty.  (ECF No. 12 at 11.)  Plaintiffs dispute that a valid arbitration agreement exists.  (ECF No. 17 at 3.)  Therefore, as a threshold issue, the Court will address Plaintiffs' arguments to determine whether a valid arbitration agreement exists.

#### A.   Existence of a Valid Arbitration Agreement

In making a determination to compel arbitration, the Court "should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 11656, 1170 (9th Cir. 2003).  Under California law, a valid contract requires: (1) parties capable

4

of contracting; (2) mutual consent; (3) a lawful object; and (4) sufficient cause or consideration. Cal. Civ. Code § 1550. Plaintiffs argue that they did not consent to the terms of the Limited Warranty, including the arbitration agreement. Nevertheless, the Court finds the arbitration agreement enforceable for the following reasons.

   1. <u>Plaintiffs were aware or should have been aware of the arbitration agreement at the time of purchase.</u>

Plaintiffs argue that they were not aware of the arbitration terms at the time of purchase, therefore they did not agree to them. (ECF No. 17 at 10.) They claim they were deprived of the opportunity to view and reject the terms prior to purchase, because the terms were not presented until the Tamko shingles had already been purchased and delivered. (ECF No. 17 at 10.) However, Plaintiffs acknowledge having performed comparison shopping prior to their purchase of Defendant's shingles. (ECF No. 1 at ¶ 23.) Defendant argues that during this process of comparison shopping, Plaintiffs became aware of the terms, and therefore agreed to them by proceeding with the purchase. (ECF No. 24 at 4.) The Court finds sufficient evidence to conclude that Plaintiffs became familiar with the terms of the Limited Warranty.

In their Complaint, Plaintiffs state that "prior to purchase, [they] compared Tamko's shingles to those of other manufacturers and decided to purchase Tamko shingles based on the representations contained in advertising and marketing materials, specifically that the shingles would be free from defects for fifty years." (ECF No. 1 at ¶ 23.) According to the declaration[2] Defendant submitted in support of its motion, these marketing materials contained references to the Limited Warranty, and directed readers to the Tamko website in order to view its full terms.[3]

---

[2] Defendant submits the declaration of Titia Miller (ECF No. 19) as support for its motion to compel arbitration. The declaration makes a number of assertions regarding Tamko's warranties and marketing materials, apparently based on Ms. Miller's expertise as Corporate Manager for Customer Service and Sales Administration.

[3] Defendant includes a brochure, which the declaration asserts is identical to the brochure Tamko used during 2005, the year Plaintiffs purchased their shingles. (ECF No. 19 at ¶ 16.) On the final page of the brochure, readers are advised to either contact a Tamko representative or visit the Tamko website in order to view the terms of the Limited Warranty. (ECF No. 12, Attach. 5 at 9.) Plaintiffs specifically reference using Tamko brochures during the process of shopping for the shingles. (ECF No. 1 at ¶ 22.)

(ECF No. 19 at ¶ 9–10, 12.) While there is no direct evidence that Plaintiffs viewed the terms as provided on Tamko's website, Plaintiffs' own statements indicate that Plaintiffs knew or should have known about the Limited Warranty prior to purchase. For example, Plaintiffs claim in the Complaint that Tamko represented its shingles as being "free of defects for 50 years" (ECF No. 1 at ¶ 7), Defendant counters that "[r]eferences that TAMKO has made to the term '50 years' in its advertisements and marketing materials are in the context of advertising its '50-Year Limited Warranty.'" (ECF No. 19 at ¶ 14.)

The evidence indicates that Plaintiffs had notice of the Limited Warranty governing the shingles when they viewed the marketing materials and then proceeded to make the purchase. Such conduct suggests an agreement to the terms. "[A] 'contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.'" *Arizona Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Int'l, Inc.*, 421 F.3d 981, 987 (9th Cir. 2005) (quoting Cal. Com.Code § 2204(1)). Whether or not the Plaintiffs actually read the warranty is irrelevant. *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997) ("A contract need not be read to be effective; people who accept [the contract] take the risk that the unread terms may in retrospect prove unwelcome."). By their own admission, Plaintiffs reviewed marketing materials that contained references to the Limited Warranty and information about how to locate its terms. "The party seeking to compel arbitration bears the burden of establishing the existence of an agreement to arbitrate by a preponderance of the evidence." *Johnson v. Long John Silver's Restaurants, Inc.*, 320 F. Supp. 2d 656, 664 (M.D. Tenn. 2004) *aff'd*, 414 F.3d 583 (6th Cir. 2005); *Toal v. Tardif*, 178 Cal. App. 4th 1208, 1219 (2009). The Court finds by a preponderance of the evidence that Defendant has shown Plaintiffs knew or should have known about the arbitration agreement prior to purchase, and therefore accepted its terms by making the purchase.

                    2.    <u>Defendant offers sufficient evidence for the existence of the terms on the shingles.</u>

Even if Plaintiffs did not have notice of the terms of the Limited Warranty prior to purchase, the arbitration agreement is still enforceable.  First, there is sufficient evidence that an arbitration agreement accompanied the shingles delivered to the contractors.

Defendant provided three versions of the Limited Warranty that accompanied its shingles throughout different years.  Plaintiffs argue that Defendant cannot establish which of the three versions of the Limited Warranty accompanied the shingles that were installed on their home. (ECF No. 17 at 17–19.)  One of the versions, which states that it applies to all shingles sold after January 1, 2003, does not contain the arbitration agreement.  (ECF No. 17, Attach 7.)  Plaintiffs suggest that this could have been the version that accompanied the shingles installed on their home.  The two other versions purport to apply to all Tamko shingles sold after December 1, 2004, and December 1, 2005, respectively.  (ECF No. 17, Attach. 6–7.)  Except for the dates, these latter two versions are identical, and both contain the mandatory arbitration agreement.

The shingles were installed on Plaintiffs' home in February, 2006.  Though neither party provides a date of purchase, it is more likely than not that the Limited Warranty on the Hoekman's shingles was one of the two later versions, either of which would have contained the mandatory arbitration agreement.  Defendants attached a declaration in support of this conclusion. (Declaration of Titia Miller, ECF No. 19.)  The declaration states that "TAMKO's entire limited warranty agreement, which includes a mandatory arbitration clause, is printed on the outside of every package of TAMKO shingles—including the TAMKO Heritage 50 Shingles purchased by the Hoekmans." (ECF No. 19 at ¶ 10.)  The declaration identifies the 2004 warranty, which was attached to the Motion to Compel Arbitration, as having been printed on the Hoekman's shingles. (ECF No. 19 at ¶ 9.)  Defendant has proved by a preponderance of the evidence that the Hoekman's shingles were accompanied by the mandatory arbitration agreement.

### 3. Defendant offers sufficient evidence that the terms are properly presented.

Plaintiffs argue that as the "ultimate purchasers" of the shingles, their pre-purchase acceptance of the terms was somehow required.[4] (ECF No. 17 at 10.) However, case law indicates that whether or not the purchaser reads the terms included with the product, either before or after purchase, such terms are enforceable.

The terms of the arbitration clause were printed on the outside of each package of Tamko shingles. (ECF No. 19 at ¶ 10.) Numerous cases support the validity of this method of providing arbitration terms post-purchase, which is comparable to the shrinkwrap licenses that frequently accompany purchases of computer software.[5] In general, "contracts contained in [] boxes…are no less enforceable than any other kind of contract." *Novell, Inc. v. Unicom Sales, Inc.*, No. 03-cv-2785 MMC, 2004 WL 1839117, at *11 (N.D. Cal. Aug. 17, 2004) (citing *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1449 (7th Cir. 1996)). "The weight of authority…is that shrinkwrap licenses are enforceable." *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F.Supp.2d 974, 989 (N.D. Cal. 2010). Courts have repeatedly upheld arbitration provisions that come in the form of shrinkwrap agreements. *See, e.g., Herron v. Best Buy Stores, Inc.*, 924 F.Supp.2d 1161 (E.D. Cal. 2014). In light of this precedent, the Court concludes that Tamko delivered the arbitration agreement in a legally valid manner.

Plaintiffs also argue that the arbitration agreement is not enforceable because its terms

---

[4] Plaintiffs make this argument on the basis of the holding in *Arizona Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Int'l, Inc.*, 421 F.3d 981 (9th Cir. 2005). In *Arizona Cartridge*, the Ninth Circuit upheld the terms printed on the outside of an ink cartridge box, in part because buyers had an opportunity to view them prior to purchase. *Id*. at 987.

[5] "The 'shrinkwrap license' gets its name from the fact that retail software packages are covered in plastic or cellophane 'shrinkwrap,' and some vendors…have written licenses that become effective as soon as the customer tears the wrapping from the package." *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1449 (7th Cir. 1996). Typically, the shrinkwrap license is contained on the outside of the product's packaging, or contained within the box. *See Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 988 (N.D. Cal. 2010); *ProCD*, 86 F.3d at 1449.

were not "clearly marked" on the packaging and that they cannot be found to have consented to language they could not reasonably have been expected to read. (ECF No. 17 at 10.)  The Court finds no specific standard for the visibility of terms appearing on packaging.  Ultimately, Plaintiffs are disputing the conspicuousness of the arbitration agreement, so the Court looks to the California Commercial Code's definition of the term.  "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." Cal. Com. Code § 1201.  The Code also provides that "[w]hether a term is 'conspicuous' or not is a decision for the court." *Id*.  As it appears on copies of the Limited Warranty provided by Defendant, the arbitration agreement satisfies this definition. (ECF No. 12, Attach. 1–4.)  Within the most prominent section of the label, a warning in large type references the warranty and states that it is printed elsewhere on the wrapper.  (ECF No. 12, Attach. 3.)  In a nearby section of the label, the heading 'Mandatory Binding Arbitration' appears in boldface type, with a description of the terms immediately underneath.  (ECF No. 12, Attach. 4.)

    The Court finds that the terms were sufficiently visible to satisfy the unofficial standard set by previous cases.[6]  The Court therefore holds that the terms of the arbitration provision were presented in such a way as to create an enforceable agreement when the shingles were received and retained by Plaintiffs' contractors.[7]

///

---

[6] Furthermore, the Supreme Court held in *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 688 (1996), that the Federal Arbitration Act preempted a state law setting special prominence requirements on arbitration clauses. Therefore, Plaintiffs' argument that the arbitration agreement was not adequately conspicuous is based on a standard of their own creation and is thus unavailing.

[7] Defendant argues an alternative basis for finding that Plaintiffs agreed to the Limited Warranty.  Defendant claims that by submitting a Limited Warranty Claim Form after experiencing issues with their Tamko shingles, Plaintiffs indicated their acceptance of the Limited Warranty's terms, including the arbitration agreement.  (ECF No. 12 at 13.)  Plaintiffs also endorsed and cashed the $100 check they received in return, which Defendant argues constituted their acceptance of a full settlement of their claim.  (ECF No. 12 at 13.)  The Court takes note but reserves ruling on whether these actions by Plaintiffs were sufficient to establish a valid agreement.

> 4. Contractor's knowledge of the arbitration agreement is imputed to Plaintiffs.

Plaintiffs further maintain that because they did not personally view the arbitration agreement, it does not bind them. (ECF No. 17 at 10.) Defendant counters that Plaintiffs consented to the agreement through their contractor. (ECF No. 24 at 4.) Relying on Cal. Civ. Code § 2332, Defendant argues that the contractor's role as Plaintiffs' agent meant that his knowledge of the agreement was imputed to them. (ECF No. 24 at 3–4.) *See* Cal. Civ. Code § 2332 ("As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."); *Faires v. Title Ins. & Trust Co.,* 15 Cal. App. 2d 350, 354 (1936) ("Knowledge acquired by an agent during the agency and within its scope is imputed to the principal.").

"An agent is one who represents another…in dealings with third persons." *Zimmerman v. Superior Court*, 220 Cal. App. 4th 389, 401 (2013) (quoting Cal. Civ. Code § 2295). Despite the lack of detail in the pleadings, the Court infers from the Complaint that Truckee River Roofing was working directly for and on behalf of Plaintiffs when it received, opened, and installed the roofing tiles. (ECF No. 1 at ¶ 21.) Plaintiffs indicate that they intended the shingles to be delivered directly into the care of Truckee River Roofing. (ECF No. 17 at 10–11.) By entrusting the receipt and installation of the shingles to Truckee River Roofing, Plaintiffs indicated that they were authorizing their contractor to represent them in their receipt of the shingles from Tamko. The Court finds this evidence sufficient to establish implied agency between Plaintiffs and their contractors. *Zimmerman*, 220 Cal. App. 4th at 401 ("Agency may be implied based on conduct and circumstances."); *Whittaker v. Otto*, 188 Cal. App. 2d 619, 622–23 (Ct. App. 1961) ("Agency may… be proven by circumstantial evidence, including evidence of the acts of the parties[.]"). Within the scope of the receipt and installation of the shingles, Truckee River Roofing was indeed

10

acting as an agent for Plaintiffs.

Because the Court finds that an agreement was established between Tamko and the contractor when the packaged tiles were delivered, the agreement binds Plaintiffs as well. "It is also well-settled law in this state that notice given to or possessed by an agent within the scope of his employment and in connection with, and during his agency is notice to the principal." *Early v. Owens*, 109 Cal. App. 489, 494 (1930). That the contractor did not convey the terms of the Limited Warranty to Plaintiffs is moot. "The fact that he may or may not have reported this information to his principal is immaterial, for he was acting in the course of his employment and the principal was charged with knowledge of information acquired by him in the transaction of her business." *Granberg v. Turnham*, 166 Cal. App. 2d 390, 395 (1958).

Defendant provides reference to two recent cases in which courts have upheld this particular arbitration agreement. In *Krusch v. TAMKO Bldg. Products, Inc.*, 34 F. Supp. 3d 584, 594 (M.D.N.C. 2014), the district court found that the plaintiff had agreed to the arbitration clause because he had constructive notice through his contractor, who the court held was acting as his agent. Tamko had produced evidence that the plaintiff's contractor had received a sample shingle that was stamped with language referencing the Limited Warranty, as well as brochures. *Id*. at 589.

In *Overlook Terraces, Ltd. V. TAMKO Building Products, Inc.*, No. 3:14-cv-00241-CRS, slip op. (W.D. Ky. July 27, 2015), a Kentucky district court held that the terms of the limited warranty were binding on the building owner, despite their lack of actual knowledge.[8] The court noted that the language of the warranty specifically applies to the owner of the building upon which the shingles were installed. (ECF No. 32, Attach. 1 at 7.) Therefore, the owner had the

---

[8] The Report and Recommendation made by the magistrate judge (ECF No. 32, Attach. 1) were adopted in full by Senior Judge Charles R. Simpson III on July 27, 2015. Judge Simpson's Order, which compels binding arbitration and stays the proceedings, is included in Defendant's notice of supplemental authority. (ECF No. 33.)

burden of proving that the arbitration agreement should not apply.  The district court found that the owner failed to meet this burden, rejecting the plaintiff's arguments that he received insufficient notice of the agreement and that Tamko had waived its right to enforce it.  (ECF No. 32, Attach. 1 at 7.)

In these two cases, district courts upheld the arbitration agreement when contractors shopped for and eventually installed the shingles without the owner-plaintiffs ever seeing the marketing materials or the warranty.  Here, Plaintiffs' connection to the Limited Warranty is even closer, because they personally shopped for and purchased the shingles.  The aforementioned Tamko cases, in addition to general principles of agency, provide sufficient support for the enforcement of the arbitration agreement.  Holding for the Plaintiffs would mean that purchasers can deny unwanted terms, as long as they avoid reading them prior to purchase and then have the product delivered to someone else.  With good reason, prior courts have rejected this outcome.  Similarly, this Court finds that Plaintiffs' alleged lack of actual notice is not enough to overturn the valid arbitration agreement.

### B.  **The Instant Dispute is within the Scope of that Agreement**

Given the Court's finding that there is a valid arbitration agreement, the question then becomes "whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  Although Plaintiffs argue there was not a valid arbitration agreement, they do not contest that if the Court were to find an agreement their claims would fall within its scope.

The Limited Warranty requires Plaintiffs and Defendant to arbitrate "every claim, controversy, or dispute of any kind whatsoever…relating to or arising out of the shingles or this limited warranty[.]"  (ECF No. 12 at 6.)  Plaintiffs' claims arise out of both the shingles themselves and Tamko's representations of them.[9]  Because the broad language of the arbitration

---

[9] Plaintiffs allege violations of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200), the California False Advertising Law (Cal. Bus. & Prof. Code § 17500), and the California Consumer Legal Remedies

agreement encompasses any claims "relating to or arising out of" the shingles, all aspects of the instant dispute fall within its scope.

The Limited Warranty also contains a provision that requires Plaintiffs to arbitrate individually and prohibits Plaintiffs from seeking class treatment without a previous written agreement between Defendant and Plaintiffs. (ECF No. 12 at 6.) Class action waivers contained within arbitration agreements are valid and enforceable. *See generally AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). Therefore, Plaintiffs must pursue their claims on an individual basis through arbitration.

### C. The Arbitration Agreement is Not Unconscionable

Plaintiffs argue that the arbitration agreement is unenforceable on the basis of unconscionability. (ECF No. 17 at 5.) California courts apply a "sliding scale" analysis in making determinations of unconscionability: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable and vice versa." *Kilgore v. Keybank, Nat'l Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). "No matter how heavily one side of the scale tips, however, both procedural and substantive unconscionability are required for a court to hold an arbitration agreement unenforceable." *Kilgore*, 673 F.3d at 963 (quoting *Armendariz*, 24 Cal. 4th at 89). The Court must apply this balancing test to determine if the arbitration agreement is unenforceable. As the party opposing arbitration, Plaintiffs bear the burden of proving unconscionability by a preponderance of the evidence. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997). The Court finds Plaintiffs have not met this burden for the following reasons.

#### 1. Procedural Unconscionability

Plaintiffs assert that the arbitration agreement is procedurally unconscionable because

---

Act, as well as negligence. (ECF No. 1 at 2.) They file a class action seeking damages and declaratory relief on behalf of themselves and others similarly situated. (ECF No. 1 at ¶ 37.)

they were not presented with its terms prior to purchase. (ECF No. 17 at 8.) They claim they did not receive a copy of the Limited Warranty until it was mailed to them in 2013 as part of Tamko's settlement offer package. (ECF No. 17 at 8.)[10] In evaluating procedural unconscionability under California law, courts "focu[s] on the factors of surprise and oppression in the contracting process, including whether the contract was one drafted by the stronger party and whether the weaker party had an opportunity to negotiate." *Pokorny v. Quixtar*, 601 F.3d 987, 996 (9th Cir. 2010).

Oppression arises "from an inequality of bargaining power [that] results in no real negotiation and an absence of meaningful choice." *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1106 (9th Cir. 2003) (quoting *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532 (1997)). As a standardized contract, the terms of which Plaintiffs had no opportunity to negotiate, the Limited Warranty is by nature an adhesion contract. Therefore, it is at least moderately procedurally unconscionable under California law. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) ("California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree.").

The lack of a "surprise" element prevents the Court from finding substantial procedural unconscionability. Surprise "involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party," *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). As described above, the arbitration agreement was clearly visible and provided in a manner consistent with similar agreements

---

[10] Rather than perform their own procedural analysis, Plaintiffs advocate for the Court to accept the reasoning of a South Carolina district court that recently found Tamko's warranty unconscionable in *One Bell Hall Property Owners Association, Inc., et al., v. Trammell Crow Residential Company, et al.*, No. 2012-CP-10-7594. (ECF No. 17, Attach. 1.) In *One Belle Hall*, the court found that numerous sections of the Limited Warranty were unconscionable, focusing primarily on provisions that were unrelated to arbitration. (ECF No. 17, Attach. 1 at 3–4.)

previously upheld by courts. Additionally, Plaintiffs had the opportunity to view the entire Limited Warranty, including the arbitration agreement, prior to purchase. Therefore, the agreement is not procedurally unconscionable.

### 2. Substantive Unconscionability

Plaintiffs argue that the arbitration agreement is substantively unconscionable because it denies their right to a jury trial. (ECF No. 17 at 8.) In order to prove that this constitutes substantive unconscionability under California law, Plaintiffs must show that it leads to "'overly harsh' or 'one-sided' results." *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) (quoting *Armendariz*, 24 Cal. 4th at 114) ("[S]ubstantive unconscionability 'focuses on 'overly harsh' or 'one-sided' results.'"). However, the instant arbitration agreement requires both parties to resolve all disputes through binding arbitration subject to the rules of the American Arbitration Association. (ECF No. 24 at 10.) Because both parties must submit to arbitration, this Court finds that the arbitration terms are neither overly harsh nor one-sided.[11] Without such a finding, the Court cannot conclude that there is substantive unconscionability.[12]

In order to render an arbitration agreement unenforceable, California law requires a finding of both procedural and substantive unconscionability. *Kilgore*, 673 F.3d at 963. The arbitration agreement at issue fails to meet this standard. Accordingly, the Court holds that the arbitration agreement is enforceable.

---

[11] This Court held similarly in *Morgan v. Xerox Corp.*, No. 2:13-CV-00409-TLN-AC, 2013 WL 2151656, at *4 (E.D. Cal. May 16, 2013), when it ruled that plaintiff's waiver of the right to a jury trial was not unconscionable because the defendants had also waived that right.

[12] As additional support, Defendant points to two district court cases in which Tamko's arbitration agreement was upheld. In *Krusch v. TAMKO Bldg. Products, Inc.*, 34 F. Supp. 3d 584 (M.D.N.C. 2014), the court determined the arbitration agreement was enforceable and granted Tamko's motion to stay the proceedings. Similarly, in *Mann v. TAMKO Bldg. Prods., Inc.*, No. 2008 CV 05392, slip op. at 11–12 (Ohio C.P. Ct. Apr. 30, 2009), an Ohio magistrate judge rejected the plaintiff's unconscionability arguments and granted Tamko's motion to stay pending arbitration. Though not dispositive in the instant case, these decisions give additional weight to Defendant's arguments against a finding of unconscionability.

### D. Motion to Compel Arbitration and Dismiss

Having concluded that a valid arbitration agreement exists and that the disputes are encompassed within the scope of the agreement, the Court must compel arbitration and either dismiss the action or stay the proceedings. A district court "has the discretion to either stay the case pending arbitration or to dismiss the case if all of the alleged claims are subject to arbitration." *Delgadillo v. James McKaone Enterprises, Inc.*, No. 1:12-CV-1149 AWI MJS, 2012 WL 4027019, at *3 (E.D. Cal. Sept. 12, 2012). The Court concludes that all of Plaintiffs' claims are subject to arbitration, and therefore dismisses Plaintiffs' claims without prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Compel Arbitration, and DISMISSES Plaintiffs' claims without prejudice so that they can be addressed in arbitration.

IT IS SO ORDERED.

Dated: August 24, 2015

Troy L. Nunley
United States District Judge